UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANGELA RAMOS,                          )
                                       )
             Plaintiff                 )
                                       )
      v.                               )      CASE NO. 3:06-CV-326RM
                                       )
SAMPCO OF INDIANA, INC.,               )
                                       )
             Defendant                 )

OPINION and ORDER

This cause is before the court on the motion of Sampco of Indiana, Inc. for summary judgment on Angela Ramo's claims against it. Ms. Ramos claims that while she was employed at Sampco's South Bend, Indiana, plant, she was subjected to sexual harassment (Count I) and fired in retaliation for complaining about the alleged harassment to her supervisors (Count II) in violation of 42 U.S.C. § 2000e *et seq.* Sampco also moves to strike portions of Ms. Ramo's affidavit and portions of her brief in opposition to Sampco's motion for summary judgment. Resolution of Sampco's motion to strike is not necessary to a determination of the issues before the court, so that motion is denied as moot. For the reasons that follow, the court grants Sampco's summary judgment motion.

I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are viewed in the light most favorable to Ms. Ramos, the nonmoving party. On April 8, 2005, Ms. Ramos accepted a position in Sampco's Indiana manufacturing

plant. Ms. Ramos worked as a boxer or packer until August 19, 2005, when the plant manager, Dennis Beasley, terminated her. Ms. Ramos maintains that her immediate supervisor, Steven Howard, repeatedly harassed her during her four months employment at Sampco. Ms. Ramos further contends that she complained to various individuals in management about Mr. Howard's conduct and that she was laid off the same day that she complained to Mr. Beasley.

Sampco manufactures sample boards and stack decks for roofing and flooring products. In its South Bend facility, Sampco employs two shifts of production workers, the size of its workforce fluctuating in response to the seasonal nature of the industry. The plant manager oversees production, safety, and personnel decisions related to the facility, and shift supervisors are responsible for monitoring the employees on the board line. Ms. Ramos reported directly to her shift supervisor, Mr. Howard, to receive job assignments, and Mr. Howard had the authority to discipline Ms. Ramos for substandard performance.[1]

Around the fourth day of her employment at Sampco, Ms. Ramos says that Mr. Howard began to sexually harass her. Ms. Ramos claims that Mr. Howard harassed her fifteen to twenty times a day while following her around the shop floor and paging her to his office. During these encounters, Mr. Howard allegedly made inappropriate comments of a sexual nature and, on two occasions, made

---

[1] Although Mr. Howard admits in his deposition that he personally counseled Ms. Ramos about performance issues, Sampco states that only the plant manager, Mr. Beasely, was authorized to actually terminate or lay off employees. (Howard Dep. at 63.)

2

unwelcome, physical contact with Ms. Ramos.

Ms. Ramos says that she made numerous complaints about Mr. Howard's harassment to Sampco supervisors. First, Ms. Ramos says that she discussed Mr. Howard's conduct with Paula Davis, whom Ms. Ramos believed to be a supervisor. Second, Ms. Ramos reports that she told John Lott, the second shift supervisor, about Mr. Howard's conduct on several different occasions. According to Ms. Ramos, Mr. Lott suggested that Ms. Ramos approach Mr. Beasley and request a shift change with the explanation that she needed to be moved due to an inability to obtain day care for her children. Ms. Ramos says that she approached Mr. Beasely on August 19 and asked for a schedule change. According to Ms. Ramos, Mr. Beasley balked at Ms. Ramos' day care issues, at which point Ms. Ramos told him that the reason she needed to change shifts was because of Mr. Howard's harassment. Ms. Ramos contends that she told Mr. Beasley that she was experiencing shortness of breath, pain in the arms, and chest pain as a result of the harassment. Ms. Ramos admits in her deposition that she did not mention the sexual nature of Mr. Howard's conduct to Mr. Beasley.

Ms. Ramos also claims that she twice requested an employee handbook from Virginia Pacheco, a supervisor for quality control. Ms. Ramos maintains that the second time she asked for the handbook was a few hours before she was terminated. According to Ms. Ramos, instead of retrieving the handbook, Ms. Pacheco went into Mr. Beasley's office. About two hours later, Ms. Ramos says that Mr. Howard approached her with a letter authored by Mr. Beasley informing

3

Ms. Ramos that she was being laid off. Ms. Ramos believes that she was laid off because she complained about Mr. Howard's behavior.

Ms. Ramos filed a charge with the EEOC, complaining that she had been harassed based on her sex and suffered retaliation as a result of her complaints about that harassment. The EEOC issued its right to sue letter, and Ms. Ramos timely filed her complaint seeking reinstatement and lost wages, as well as an award of compensatory and punitive damages, fees, and costs.

Sampco responds that Ms. Ramos was not performing her job up to its reasonable expectations and that she received several verbal warnings about her behavior. Sampco presents evidence from fellow employees stating that Ms. Ramos frequently was seen sleeping or reading on the job. Ms. Ramos contends that she was never made aware of any of these concerns. Sampco also says Ms. Ramos told Mr. Beasley that she would be forced to quit because of her day care concerns, and this factor, combined with Sampco's seasonal production slow-down, prompted Mr. Beasley to include Ms. Ramos with the eleven other individuals who were laid off between August and October 2005. Sampco also says that Mr. Beasley was not aware of any claims of sexual harassment when he decided to lay off Ms. Ramos.

## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).


*(A) Sampco's Motion to Strike*

Sampco has moved to strike portions of Ms. Ramos' evidence submitted in support of her opposition to Sampco's motion for summary judgment, specifically portions of Ms. Ramos' affidavit and corresponding portions in Ms. Ramos' opposition brief.

Altered Job Application. Sampco argues that the portions of Ms. Ramos'

5

affidavit and brief concerning her allegedly altered job application should be stricken because these statements contradict her prior testimony. When questioned at her deposition, Ms. Ramos confirmed that her application was accurate and didn't mention any concerns about the document having been modified. In her affidavit, Ms. Ramos states that she originally listed a prior incident of sexual harassment on her application, but Mr. Howard told her that she wouldn't be hired if she claimed that she had been harassed at a previous employer. As discussed below, this evidence does not satisfy Ms. Ramos' burden of proof on her retaliation claim. As such, this evidence does not affect the outcome of the summary judgment motion, and the court denies Sampco's motion to strike Ms. Ramos' affidavit and corresponding arguments as moot.

Alleged Hearsay Statements. Sampco also argues that a number of out-of-court statements presented by Ms. Ramos should be stricken from the record as inadmissible hearsay. As before, these statements are not sufficient to demonstrate a hostile work environment or retaliation. Because consideration of these statements does not affect the outcome of summary judgment, the court denies Sampco's motion to strike these statements as moot.

*(B) Count I - Hostile Work Environment*

Ms. Ramos alleges that Sampco created a hostile work environment constituting sexual harassment under Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for an employer to "discriminate against any individual with

6

respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To succeed on a Title VII claim, Ms. Ramos must establish a prima face case by showing that: "(1) she was subject to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment that affected seriously [her] psychological well-being . . .; and (4) there is a basis for employer liability." McPherson v. City of Waukegan, 349 F.3d 430, 437-438 (7th Cir. 2004); Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002).

An employer's liability for a hostile work environment begins with inquiry whether the harasser is the victim's supervisor or merely a co-employee. Employers are vicariously liable for hostile work environment harassment "created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). Mr. Howard had immediate supervisory authority over Ms. Ramos, as established by his ability to discipline Ms. Ramos and evaluate her work performance. As such, Sampco is strictly liable for any actionable harassment of Ms. Ramos by Mr. Howard. Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

At the summary judgment stage, the plaintiff has the burden of presenting evidence to show that the discriminatory conduct at issue was sufficiently severe or pervasive to alter the conditions of her employment. Harris v. Forklift Sys., Inc., 510 U.S.17, 21 (1993); see also McPherson v. City of Waukegan, 349 F.3d at 438;

7

Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 342-343 (7th Cir. 2001). To meet this standard, the plaintiff must show that her work environment was both subjectively and objectively hostile. McKenzie v. Milwaukee County, 381 F.3d 619, 624-625 (7th Cir. 2004). The subjectivity requirement ensures that the plaintiff, herself, regarded her environment as abusive, while the objectivity requirement considers the likely impact on a reasonable employee in the plaintiff's position. Haugerud v. Amery Sch. Dist., 259 F.3d 678, 693 (7th Cir. 2001). In determining whether a work environment is objectively hostile, "a court must consider all circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (citing Harris v. Forklift Sys. Inc., 510 U.S. at 23).

While Title VII prohibits an abusive working environment, it does not mandate admirable behavior from employers. Russell v. Bd. of Trs., 243 F.3d at 343; *see also* Faragher v. City of Boca Raton, 524 U.S. at 788 ("Title VII does not become a 'general civility code.'"). To rise to the level of actionable harassment, the alleged misconduct must alter the conditions of the plaintiff's employment "in a significant way." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) ("The workplace that is actionable is one that is 'hellish.'") (citation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to actionable harassment. Faragher v. City of Boca Raton, 524 U.S. at 788; Adusumilli v. City of Chicago, 164 F.3d at 362 (holding that the

8

Seventh Circuit has a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex.") (citing Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996)).

Ms. Ramos argues that a reasonable trier of fact could find that she was harassed because of her sex and that Mr. Howard's conduct created a hostile work environment. Specifically, Ms. Ramos claims that Mr. Howard followed her around the shop floor and paged her to his office where he would make sexually inappropriate comments, sometimes while grabbing himself. These comments included statements that Mr. Howard was a pimp, that he had slept with Ms. Ramos' mother, and that he could make Ms. Ramos "top dollar" by "pimping her" to older, Caucasian men. Ms. Ramos also claims that Mr. Howard made remarks about her appearance and once suggested in front of male co-workers that "he could make her life easier if she got down on her knees." On one occasion, Ms. Ramos says that Mr. Howard discussed naked women on the internet and a relative having sex with domestic animals.

Ms. Ramos also reports two incidents of unwelcome touching by Mr. Howard. The first incident involved Mr. Howard rubbing Ms. Ramos' lower back and face while telling her she looked like her mother, was gorgeous, and could make money off of her. The second incident occurred a few weeks later, when Mr. Howard rubbed Ms. Ramos' face and told her she was beautiful.

9

The record, when viewed in the light most favorable to Ms. Ramos, supports the contention that she subjectively perceived her workplace to be abusive. There is no genuine dispute of material fact, however, as to whether Mr. Howard's conduct was sufficiently severe or pervasive enough to create an objectively hostile work environment. Mr. Howard's conduct, while inappropriate, is similar to that in other cases finding no actionable sexual harassment. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463 (7th Cir. 2002) (finding no hostile work environment where supervisor allegedly rubbed the plaintiff's back, squeezed her shoulder, stared at her chest, and told her to open her blazer during a uniform inspection); Baskerville v. Culligan Int'l, 50 F.3d 428, 430 (7th Cir. 1995) (finding no actionable harassment where the supervisor called the plaintiff a "pretty girl," made grunting sounds at the plaintiff, and stated that a public announcement to the plaintiff was a request that "all pretty girls run around naked" ); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (finding no actionable harassment where supervisor asked plaintiff for dates on repeated occasions, twice attempted to kiss her, placed his hand on her shoulder several times, and placed "I love you" signs in her work area).

Ms. Ramos' allegations of harassment fit into two categories: verbal comments and unwelcome physical contact. Mr. Howard's verbal comments, by themselves, were not egregious enough to constitute actionable conduct. *See* McPherson v. City of Waukegan, 379 F.3d at 438-439 (finding that supervisor's repeated inquiries about what color bra the plaintiff was wearing, suggestive

10

comments, and pulling back her tank top to see the plaintiff's bra did not create a hostile work environment); <u>Minor v. Ivy Tech State Coll.</u>, 174 F.3d at 859 (affirming summary judgment for employer where supervisor called the plaintiff almost every day, put his arms around her, and kissed and squeezed her). Mr. Howard's statements that he was a pimp and could make money off of Ms. Ramos sleeping with other men did not directly solicit sex from Ms. Ramos. Similarly, Mr. Howard's comments regarding Ms. Ramos' mother and Ms. Ramos "getting down on her knees" were not physically threatening or intimidating and, instead, amount to shop talk. <u>Id.</u> at 858 (7th Cir. 1999) ("It is not enough that a supervisor or co-worker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America regardless of the sex of the employee, to be classified as discriminatory."). Ms. Ramos claims these comments were made on a regular basis, but their frequency alone does not make up for their lack of severity. *See* <u>Venters v. City of Delphi</u>, 123 F.3d 956, 975 (7th Cir. 1997) ("Whether or not the plaintiff's work environment may be considered 'hostile' for purposes of Title VII is an assessment that depends on the totality of the circumstances.").

The most serious of Ms. Ramos' allegations—that Mr. Howard made unwanted, physical contact with her—also differ from the acts in cases finding actionable sexual harassment. <u>Patton v. Keystone RV Co.</u>, 455 F.3d 812, 816-817 (7th Cir. 2006) (distinguishing supervisor's touching of the plaintiff's leg and putting an arm around her waist from placing his hand up her shorts and

touching an "intimate body part"); Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808-809 (7th Cir. 2000) (holding that forcible kissing and attempting to remove the plaintiff's bra constituted actionable harassment). As noted in Hostetler, "[t]here are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor." Id. at 808. The two physical acts at issue here, touching of the face and lower back, lack the intimate and forcible character necessary for a reasonable jury to find that Ms. Ramos was subjected to a hostile work environment. *See* Hilt-Dyson v. City of Chicago, 282 F.3d at 463-464 (holding that multiple incidents of back rubbing involving no threats, intimidation, or humiliation were not enough to constitute actionable sexual harassment); Adusumilli v. City of Chicago, 164 F.3d at 353 (finding that four incidents of touching, including a poke to the buttocks, did not create a hostile work environment).

In sum, Ms. Ramos has not come forth with sufficient evidence that Mr. Howard's comments unreasonably altered the conditions of her employment. Accordingly, Ms. Ramos has not carried her burden on this claim, and Sampco is entitled to summary judgment.

*(C) Count II - Retaliation*

Ms. Ramos also claims that she was the victim of retaliation because she was laid off after complaining about Mr. Howard's discriminatory acts. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an

employer . . . to discriminate against any individual . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation from complaining about the types of discrimination it prohibits." Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).

Ms. Ramos may prove Title VII retaliation using either a direct or indirect method of proof. *See* Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003) (citing Logan v. Kautex Textron N.A., 259 F.3d 635, 638-639 (7th Cir. 2002)).

## (i) Direct method

To establish a prima facie case of retaliation using the direct method, Ms. Ramos must present sufficient evidence that (1) she engaged in a statutorily protected activity (i.e., complaining about prohibited conduct); (2) she suffered an adverse employment action; and (3) there is a causal link between her opposition to the unlawful employment practice and the adverse action. *See* Oest v. Ill. Dep't of Corr., 240 F.3d 605, 615-616 (7th Cir. 2001). "In order to demonstrate the causal link, [Ms. Ramos] must demonstrate that [Sampco] would not have taken the adverse action 'but for' the protected expression." Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1146 (7th Cir. 1997).

Under the direct method of proof, there are two types of permissible evidence: direct evidence; *i.e.*, "evidence that, if believed by the trier of fact, would

prove the fact in question 'without reliance on inference or presumption'," and circumstantial evidence; "*i.e.*, evidence that allows a jury to infer intentional discrimination by the decision-maker." <u>Rogers v. City of Chicago</u>, 320 F.3d at 753 (citing <u>Walker v. Glickman</u>, 241 F.3d 884, 888 (7th Cir.2001)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." <u>Rhodes v. Ill. Dep't of Transp.</u>, 359 F.3d 498, 504 (7th Cir. 2004); *see also* <u>Hoffman v. Caterpillar, Inc.</u>, 256 F.3d 568, 576 (7th Cir. 2001) (noting that admissions of discriminatory intent are rarely encountered). Ms. Ramos cannot prove her retaliation claim using direct evidence because nothing in the record suggests that Mr. Beasley admitted that he terminated Ms. Ramos because of her complaints.

Absent direct evidence, Ms. Ramos may still proceed under the direct method if she presents a "convincing mosaic" of circumstantial evidence. *See* <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 737 (7th Cir. 1994); *see also* <u>Adams v. Wal-Mart Stores, Inc.</u>, 324 F.3d 935, 939 (7th Cir. 2003) (holding that a plaintiff may prevail under the direct method with circumstantial evidence alone, but that evidence must "point directly to a discriminatory reason for the employer's action."). Ms. Ramos relies heavily on the timing of her termination to create an inference that Mr. Beasley retaliated against her by laying her off shortly after she complained about Mr. Howard's inappropriate conduct. Suspicious timing may constitute circumstantial evidence in support of a retaliation claim, but does not, standing alone, create a genuine issue as to casual connection. *See* <u>Juarez v.</u>

Ameritech Mobile Comm'ns, Inc., 957 F.2d 317, 321 (7th Cir. 1992) (holding that the plaintiff could not prove that she was terminated because of her sexual harassment claim rather than for poor work performance based solely on timing); *see also* Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) (Although "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that 'mere temporal proximity' is not enough to establish a genuine issue of material fact.") (citing Stone v. City of Indianapolis Pub. Util. Div., 281 F.3d 640, 644 (7th Cir. 2002)). Ms. Ramos must rely on more than suspicious timing to proceed under the direct method of proof.

To meet this burden, Ms. Ramos points to a statement by her co-worker, Brien Heirford, who allegedly told her that Mr. Beasley decided to lay her off because she looked like the type of person who would start trouble. She also claims that Sampco gave shifting reasons for her termination. Sampco first said it was experiencing a seasonal production slow-down, and later contended that Ms. Ramos was the least senior and least productive of its packers. Next, Ms. Ramos tries to rely on her purportedly altered job application as evidence that Mr. Beasley had a motive to fire individuals who complained about sexual harassment. Notwithstanding the evidentiary issues addressed by Sampco in its motion to strike, this evidence does not demonstrate a casual link between Ms. Ramos' complaints and her termination. This evidence would not allow a juror to find that Mr. Beasley wouldn't have fired Ms. Ramos but for her complaints

regarding Mr. Howard's conduct. In fact, Sampco asserts that it would have terminated Ms. Ramos regardless of whether she complained about Mr. Howard because of the seasonal production slow-down and Ms. Ramos' poor performance. Sampco also disputes that Mr. Beasley was ever aware that Ms. Ramos had complained about sexual harassment. As such, Ms. Ramos has not satisfied her burden under the direct method of proof.

*(ii) Indirect method*

Unable to prevail under the direct method of proof, Ms. Ramos must proceed under the indirect, burden-shifting method. *See* Adams v. Wal-Mart, 324 F.3d at 939. Under that test, Ms. Ramos may establish a prima facie case of retaliation by demonstrating that: (1) she was engaged in a statutorily-protected activity; (2) she performed her job according to Sampco's legitimate expectations; (3) she suffered an adverse employment action; and (4) only she, and not any similarly situated employee who did not complain, was subjected to an adverse employment action. *See* Stone v. City of Indianapolis, 281 F.3d at 644. Unlike the direct method of proof, Ms. Ramos need not "show even an attenuated causal link" to establish a prima facie case under the indirect method. Id. If Ms. Ramos is successful in establishing a prima facie case, the burden of proof shifts to Sampco to articulate a legitimate, non-discriminatory reason for terminating Ms. Ramos. Id. In turn, Ms. Ramos must prove that Sampco's proffered reason is a pretext for discrimination. Id.

16

The parties do not dispute that Ms. Ramos' complaints constitute a statutorily protected activity or that her termination was an adverse employment action. In determining whether Ms. Ramos established a prima facie case, then, the court need only consider Sampco's arguments that Ms. Ramos didn't meet its legitimate performance expectations and that she can't point to any similarly-situated employees who were treated more favorably. As for the performance element, Sampco claims that Ms. Ramos often slept and read on the job and received verbal warnings from Mr. Howard. Ms. Ramos claims that she was never made aware of any of these concerns. When, as here, "the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, 'it makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations.'" Curry v. Menard, Inc., 270 F.3d 473, 477-478 (7th Cir. 2001) (citing Oest v. Ill. Dept. of Corr., 240 F.3d at 612 n.3 (the "legitimate expectations prong of the prima facie test is not necessary to the analysis, where the people judging the plaintiff's performance were the same people she accused of discriminating against her.")). Because Mr. Howard was both the alleged harasser and the evaluator of Ms. Ramos' performance, the performance prong is not necessary to the analysis of Ms. Ramos' prima facie case.

Assuming that Ms. Ramos has fulfilled the first three elements of the prima facie test, she has not shown that she was treated differently than a similarly situated employee who didn't complain of sexual harassment. A similarly situated employee must be "directly comparable in all material respects." Grayson v.

17

O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). This requires a showing that Ms. Ramos and another employee "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct . . . ." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002). Ms. Ramos cites to no evidence that Mr. Howard treated any other supervisee more favorably than she was treated. Instead, Ms. Ramos only generally claims that other female employees were allowed to "take it easy." Ms. Ramos has not presented a prima facie case of retaliation under the indirect method. *See* Kriescher v. Fox Hills Resort and Conference Ctr., FHR, Inc., 384 F.3d 912, 916 (7th Cir. 2004) (holding that the plaintiff could not out a prima facie case of retaliation without identifying a similarly situated employee).

Even if Ms. Ramos could establish a prima facie case, she could not prevail on her retaliation claim because she cannot show that Sampco's legitimate, nondiscriminatory reason for terminating her was a pretext for discrimination. Sampco maintains that because of the seasonal shift in its employment needs, it decided to lay off a number of employees between August and October 2005. Sampco chose to lay off Ms. Ramos because she wasn't performing her job satisfactorily, she was the least senior of the boxing/packing employees, and she indicated to Mr. Beasley that she would have to quit if he would not accommodate a schedule change. Because Sampco has come forward with a legitimate nondiscriminatory reason for its action, the court will assume that Ms. Ramos has satisfied the requirements of a prima facie case and will examine whether she has

18

demonstrated that Sampco's proffered reason is a pretext for discrimination. *See* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.").

Ms. Ramos asserts that Sampco gave shifting reasons for her termination, but that is not sufficient in itself to establish that Sampco's proffered reason for Ms. Ramos' lay off was pretext. In order to show pretext, Ms. Ramos must demonstrate that Sampco gave a dishonest explanation for its actions. *See* Grube v. Lau Indust., Inc., 257 F.3d 723, 730 (7th Cir. 2001) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks."). If Sampco acted in good faith, the court cannot second-guess its actions regardless of whether Sampco was correct in its beliefs. Green v. Nat'l Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999); Debs v. Northeastern Ill. Univ., 153 F.3d 390, 396 (7th Cir. 1998) (even a foolish, trivial, or even baseless decision, if honestly believed by the employer, is not pretextual). Courts cannot impose on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 2000).

Sampco consistently maintained that it was experiencing a decrease in work orders resulting from its seasonal, production slow-down. Both of Sampco's

19

position statements to the EEOC, as well as Mr. Beasley's affidavit, make that assertion. Ms. Ramos has not refuted that Sampco was in its off-season or raised an issue with Sampco's termination of eleven other employees during this same period. Further, Ms. Ramos has produced no evidence to show that Sampco's decision to terminate her was a lie or had no basis in fact. *See* Mills v. Health Care Serv. Corp., 171 F.3d 450, 458 (7th Cir. 1999). Sampco is entitled to summary judgment on Ms. Ramos' retaliation claim.

## III. CONCLUSION

For the foregoing reasons, the court DENIES Sampco's motion to strike portions of Ms. Ramos' affidavit and brief in response to Sampco's motion for summary judgment [Doc. No. 27] as moot. Ms. Ramos' allegations of sexual harassment are not severe or pervasive enough to state claim for discrimination based on a hostile work environment under Title VII. Similarly, Ms. Ramos has not produced evidence sufficient to establish a retaliation claim either by the direct of indirect method of proof. Thus, the court GRANTS Sampco's motion for summary judgment. [Doc. No. 22].

SO ORDERED.

ENTERED: September 25, 2007

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

20